KARI v GENERAL MOTORS CORPORATION

1. CONTRACTS—PROMISES—WORDS AND PHRASES.

   A promise is an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such manner to a promisee that he may justly expect performance and may reasonably rely thereon.

2. CONTRACTS—EMPLOYER AND EMPLOYEE—EMPLOYMENT HANDBOOK—SEVERANCE PAY—OFFER—PROMISSORY ESTOPPEL.

   There is no contract formed between an employer and an employee regarding severance pay by language in an employment handbook where the language fails to communicate the elements of an offer and where the requisites of promissory estoppel are not present.

3. CONTRACTS—SEVERANCE PAY—EMPLOYER AND EMPLOYEE—EMPLOYEE HANDBOOK—OFFER.

   No contract existed as a matter of law between a plaintiff employee and a defendant employer regarding severance pay where the alleged contract was based on language in an employee's handbook but the handbook description of a severance pay plan clearly evinced an intention not to create an offer capable of acceptance.

Appeal from Macomb, Hunter D. Stair, J. Submitted June 22, 1977, at Detroit. (Docket No. 30523.) Decided October 11, 1977. Leave to appeal applied for.

Complaint by John R. Kari against General Motors Corporation for payment of a separation allowance. Summary judgment for defendant. Plaintiff appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts § 2.
[2, 3] 17 Am Jur 2d, Contracts § 31 et seq.

*Jack C. Chilingirian,* for plaintiff.

*Clark, Hardy, Lewis, Fine and Asher, P. C.* (by *Terence V. Page),* for defendant.

Before: D. C. Riley, P. J., and Bashara and P. R. Mahinske,* JJ.

P. R. Mahinske, J. This case presents the question of whether statements in an employment handbook may constitute an offer to contract for severance pay, despite the presence of express disclaimers in the handbook and in its description of the severance pay plan. We hold that under the facts of this case no offer or enforceable promise was made by the handbook.

Plaintiff began working for defendant in 1955 as a process engineer. He continued in defendant's employ until March, 1972, when he requested an educational leave of absence from April to September, 1972. This leave was granted; its terms did not guarantee plaintiff his job upon his return. In September, 1972, plaintiff's leave was extended by mutual agreement until July 1, 1975. On that date, however, plaintiff's former position or one comparable to it was not available, and plaintiff was "separated" from defendant.

Plaintiff commenced the instant action in March, 1976, seeking recovery of a separation allowance allegedly guaranteed by defendant's employment handbook. This handbook, entitled "Working With General Motors", was issued to plaintiff at the time of his employment. It contains a section entitled "Separation Allowance", the first paragraph of which reads as follows:

"A Separation Allowance Plan has been established

---

* Circuit judge, sitting on the Court of Appeals by assignment.

for the benefit of salaried employes laid off or separated from the payroll under certain circumstances. The primary purpose of this Plan is to provide a source of income to eligible employes beyond the date of their layoff or separation. The inclusion of a schedule of separation allowances in this booklet, together with the conditions governing their payment, however, is not intended nor is it to be interpreted to establish a contractual relationship with the employe. Where payments are made to a laidoff employe under this Plan, the term 'Separation Allowance' will include layoff payments under the Separation Allowance Plan."

On the last page of the handbook is a general disclaimer, italicized and outlined in red:

"The contents of this handbook are presented as a matter of information only. While General Motors believes wholeheartedly in the plans, policies and procedures described here, they are not conditions of employment. General Motors reserves the right to modify, revoke, suspend, terminate, or change any or all such plans, policies, or procedures, in whole or in part, at any time, with or without notice. The language used in this handbook is not intended to create, nor is it to be construed to constitute, a contract between General Motors and any one or all of its employees."

Plaintiff asserted that the provisions of the separation allowance plan constituted an offer by defendant of a unilateral contract, which offer was accepted by plaintiff's action of working for defendant. Defendant answered that due to the disclaimers, the separation allowance provisions could not possibly be construed as an offer that would reasonably be relied upon.

· Defendant moved for summary judgment pursuant to GCR 1963, 117.2(3) on the ground that no genuine issue existed as to any material fact. The trial court granted defendant's motion on Septem-

ber 27, 1976. That court reasoned that due to the disclaimers in the handbook, no contractual duty to pay a separation allowance arose on the part of the defendant. For the reasons outlined below, we affirm the trial court's judgment.

Plaintiff's basic theory, that statements in a policy, plan, or other communication to employees may constitute an offer to contract, is sound. But it just does not apply to the facts of this case. In *Cain v Allen Electric & Equipment Co,* 346 Mich 568; 78 NW2d 296 (1956), the Court held that the adoption of a severance pay policy as part of a corporate personnel policy created an offer to contract which was accepted by plaintiff's action of continuing in defendant's employ. More recent cases decided upon this theory include *Gaydos v White Motor Corp,* 54 Mich App 143; 220 NW2d 697 (1974), *lv den,* 392 Mich 800 (1974), and *Clarke v Brunswick Corp,* 48 Mich App 667; 211 NW2d 101 (1973), *lv den,* 391 Mich 765 (1974).

A review of the above cases and those from other jurisdictions dealing with various types of employee benefits[1] reveals that the question of whether a contract exists is governed by ordinary principles of offer, acceptance, and consideration. In *Cain, supra,* for example, the Court found that the severance pay policy looked toward an agreement, and was not a mere gratuity or expression of a hope or intention. The *Cain* Court decided that the offer was a promise, relying on the following definition from 1 Corbin on Contracts, § 13, p 29:

---

[1] 40 ALR2d 1044, Anno: *Construction and effect of severance or dismissal pay provisions of employment contract or collective labor agreement,* § 2; 42 ALR2d 461, Anno: *Rights and liabilities as between employer and employee with respect to general pension or retirement plan;* 81 ALR2d 1066, Anno: *Rights and liabilities as between employer and employee with respect to general bonus or profit-sharing plan.*

"A promise is an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such a manner to a promisee that he may justly expect performance and may reasonably rely thereon."

From this definition it is clear that the theory of promissory estoppel[2] may also be used to find an enforceable contract.

However, when the employer-employee communication fails to contain the elements of an offer, and when the requisites of promissory estoppel are not present, courts will not hesitate to find that no contract was ever formed. The following communications, for example, have been held not to constitute enforceable promises or offers capable of acceptance:

1. A booklet entitled "Know Your Company" which stated:

" 'It has been customary, since 1937, for the company to make a year end payment to employees. The amount of such payment, if any, depends upon the earnings available from operations, and is entirely at the discretion of the Board of Directors.' "

*Borden v The Skinner Chuck Co,* 21 Conn Supp 184, 188; 150 A2d 607, 609 (1958);

2. A staff bulletin outlining a plan of renewal bonuses which provided:

" 'This renewal bonus is a *voluntary contribution* on the part of the Company. It is agreed by you and by us that *it may be withheld,* increased, *decreased* or discontinued, individually or collectively, with or *without notice.' "

---

2 *See* Restatement, Contracts, 2d, § 90.

*Spooner v Reserve Life Insurance Co,* 47 Wash 2d 454, 457; 287 P2d 735, 737 (1955); and

3. A listing of "Suggestion System Rules" which included the following:

" 'Each suggestion is submitted with the understanding that the Company shall have the right to publish, use or refuse it and that if it is published or used, the decision of the company shall be final and conclusive as to the amount of a cash award, if any, and the person or persons entitled thereto, and all other matters concerning the suggestion.' "

*Calkins v The Boeing Co,* 8 Wash App 347, 349; 506 P2d 329, 330 (1973).

As with the above communications, General Motors' handbook description of a separation pay plan clearly evinced an intention *not* to create an offer capable of acceptance. In addition, the manner of communication—couched in disclaimers—to the employee did not create a situation in which the employee could justly expect performance and reasonably rely thereon. *Cain v Allen Electric Co, supra.* It is difficult to imagine what defendant could have done, short of not mentioning the plan, to prevent the reading of its statement as an offer. Unlike the situation in *Cain, supra,* General Motors did not "adopt" a "policy" of severance payments as part of a drive to attract employees; instead, General Motors specifically stated that its separation pay schedule and conditions were not intended to establish a contractual relationship with the employee. An employee reading this language and that of general disclaimer at the end of the booklet should realize that further negotiations, and not merely the acceptance of employment with General Motors, are necessary to create a contract for severance pay.

Therefore, we hold that as a matter of law no contract existed between plaintiff and defendant. The trial court correctly granted summary judgment to defendant on the basis of no genuine issue as to any material fact. GCR 1963, 117.2(3).

Affirmed.