## SCHIPANI v FORD MOTOR COMPANY

Docket No. 43298. Submitted May 6, 1980, at Detroit.—Decided January 6, 1981.

Frank Schipani filed a complaint in the Wayne Circuit Court against his employer, Ford Motor Company, alleging breach of contract, age discrimination, malicious and bad faith demotion, impairment of prospective economic opportunity and failure to objectively evaluate his performance. Plaintiff was employed under a written contract providing: "I understand that my employment is not for any definite time, and may be terminated at any time, without advance notice by either myself or Ford Motor Company". He had risen to the position of Superintendent, Production, Frame Plant, when he was suspended. He then went on medical leave and was later reassigned to a different job classification at a lower salary grade. There was a question whether his superintendent's position was filled by a younger man. Defendant moved for accelerated and summary

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 53 Am Jur 2d, Master and Servant §§ 17, 32-34.

Validity and duration of contract purporting to be for permanent employment. 60 ALR3d 226.

[2] 53 Am Jur 2d, Master and Servant §§ 34, 45.

Employee's arbitrary dismissal as breach of employment contract terminable at will. 62 ALR3d 271.

[3] 72 Am Jur 2d, Statute of Frauds §§ 339, 366.

Action by employee in reliance on employment contract which violates statute of frauds as rendering contract enforceable. 54 ALR3d 715.

[4] 28 Am Jur 2d, Estoppel and Waiver § 48.

Promissory estoppel. 48 ALR2d 1069.

[5] 15 Am Jur 2d (Rev), Civil Rights § 229.

Application of state law to age discrimination in employment. 96 ALR3d 195.

Validity and construction of labor legislation prohibiting discrimination on account of age. 29 ALR3d 1407.

[6] 45 Am Jur 2d, Interference §§ 24, 55, 60.

Liability for procuring breach of contract. 2 ALR2d 1227.

[7] 57 Am Jur 2d, Negligence § 48.

judgment on all counts, which was denied, George T. Martin, J. Defendant appeals by leave granted. *Held:*

1. Plaintiff's breach of contract claim is based on both a written and oral contract. The written contract, in the absence of distinguishing features or provisions or a consideration in addition to the services to be rendered, is, by its terms, a contract terminable at will by either party with or without cause. However, plaintiff claimed that defendant's literature, policies and practices implied a contract to employ plaintiff until age 65 and not discharge or demote him without good cause. It is up to the trier of fact to determine whether the written contract was not terminable at will because of defendant's oral or written assurances. Although any oral contract is subject to the statute of frauds, promissory estoppel may act to prevent defendant from raising the defense of the statute. The elements of equitable or promissory estoppel are: 1) a promise; 2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; 3) which in fact produced reliance or forbearance of that nature; and 4) in circumstances such that the promise must be enforced if injustice is to be avoided; the reliance must be definite and substantial. Whether the elements of promissory estoppel exist to prevent the defense of the statute of frauds from being asserted is a question of fact for the jury. Denial of accelerated and summary judgment was proper.

2. Plaintiff's second count alleged age discrimination. There was a serious question of fact as to who was plaintiff's permanent replacement. Denial of summary judgment was proper.

3. Summary judgment should have been granted on plaintiff's claim of malicious and bad faith demotion, since, if his employment contract was not terminable at will, it merely restated the breach of contract claim.

4. Summary judgment should have been granted on plaintiff's claim of interference with prospective business opportunities. To withstand a motion for summary judgment, a plaintiff alleging the tort of intentional interference with the prospect of obtaining employment must specifically allege some reasonable expectation of economic advantage. Of importance is whether the plaintiff alleges interference with specific third parties or an identifiable class of third persons. Plaintiff made no such allegations. Further, this claim merely stated additional damages for breach of contract.

5. Plaintiff's claim of failure to objectively evaluate his performance states a valid claim in negligence. A common-law duty to perform with ordinary care the thing agreed to be done

accompanies every contract relationship and a negligent perfor-
mance constitutes a tort as well as a breach of contract.
Defendant's motion for summary judgment should be granted
only upon a determination that plaintiff's contract with defen-
dant was terminable at will.

Affirmed in part and reversed in part.

BEASLEY, P.J., dissented in part. He would hold that sum-
mary judgment for defendant should be granted on a claim of
breach of an implied contract of employment where there
existed a written contract of employment providing that the
employment was not for any definite term and might be termi-
nated at any time.

OPINION OF THE COURT

1. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION
   AT WILL.

   Written contracts of employment providing that the employment
   is terminable at will are generally held to be indefinite hirings,
   terminable at the will of either party in the absence of distin-
   guishing features or provisions or a consideration in addition to
   the services to be rendered.

2. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION
   AT WILL — RETALIATORY DISCHARGE — PUBLIC POLICY.

   An employee may be terminated with or without cause, even
   arbitrarily and capriciously, under a contract terminable at
   will; however, agreement to terminate only for cause or state-
   ments of company policy and procedure to that effect can give
   rise to rights enforceable in contract, and an employer at will
   should not be free to discharge an employee when the reason
   for the discharge is an intention on the part of the employer to
   contravene the settled public policy of this state.

3. FRAUDS, STATUTE OF — PARTIAL PERFORMANCE — EMPLOYMENT
   CONTRACTS.

   An agreement incapable of being performed within one year is
   unenforceable unless in writing and signed by the party to be
   charged therewith under the statute of frauds; the doctrine of
   partial performance to avoid the consequences of the statute of
   frauds is not applicable to employment contracts.

4. ESTOPPEL — RELIANCE.

   The elements of equitable or promissory estoppel are: 1) a prom-
   ise; 2) that the promisor should reasonably have expected to
   induce action of a definite and substantial character on the

part of the promisee; 3) which in fact produced reliance or forbearance of that nature; and 4) in circumstances such that the promise must be enforced if injustice is to be avoided; the reliance must be definite and substantial.

5. CIVIL RIGHTS — AGE DISCRIMINATION.

It cannot be said that, because an employee was not permanently replaced by someone younger than he, it is no longer a question of fact whether his employer discriminated against him because of age in demoting him.

6. TORTS — INTERFERENCE WITH OBTAINING EMPLOYMENT — PLEADING — SUMMARY JUDGMENT.

A plaintiff alleging the tort of intentional interference with the prospect of obtaining employment, to withstand a motion for summary judgment, must specifically allege some reasonable expectation of economic advantage; of importance is whether the plaintiff alleges interference with specific third parties or an identifiable class of third persons.

7. CONTRACTS — NEGLIGENT PERFORMANCE — TORTS — BREACH OF CONTRACT.

A common-law duty to perform with ordinary care the thing agreed to be done accompanies every contract relationship, and a negligent performance constitutes a tort as well as a breach of contract.

PARTIAL DISSENT BY BEASLEY, P.J.

8. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION AT WILL — SUMMARY JUDGMENT.

*Summary judgment for defendant should be granted on a claim of breach of an implied contract of employment where there existed a written contract of employment providing that the employment was not for any definite term and might be terminated at any time.*

*Donnelly & Associates, P.C.,* for plaintiff.

*James C. Curtiss* and *Kermit G. Bailer,* for defendant.

Before: BEASLEY, P.J., and M. F. CAVANAGH and W. A. PORTER,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

M. F. Cavanagh, J. Plaintiff, Frank Schipani, an employee of defendant Ford Motor Company, filed a complaint against defendant which alleged a breach of contract, age discrimination, malicious and bad faith demotion, impairment of prospective economic opportunity and failure to objectively evaluate plaintiff's performance.

Defendant responded by filing a motion for accelerated judgment and for summary judgment dismissing plaintiff's complaint. The trial court denied defendant's motion *in toto* and defendant now appeals by leave of this Court.

Plaintiff commenced employment with Ford Motor Company on December 8, 1948, and was periodically promoted, eventually to the position of Superintendent, Production, Frame Plant in 1969. On February 4, 1952, plaintiff signed a written employment agreement with Ford, providing:

"I understand that my employment is not for any definite term, and may be terminated at any time, without advance notice by either myself or Ford Motor Company * * *."

Plaintiff's job performance was evaluated on an annual basis. On November 4, 1977, plaintiff was suspended and thereafter went on medical leave. Effective December 1, 1977, plaintiff was reassigned to a different job classification at a lower salary grade. There is a question whether plaintiff's position as Superintendent of Production was filled by a person or persons younger than plaintiff. Plaintiff was age 53 at the time of reassignment.

Plaintiff's Count I alleges breach of an implied contract to employ plaintiff until he reached age 65 arising from defendant's literature, policy and

practices. Defendant moved for accelerated judgment claiming that the action was barred by the statute of frauds. The court denied defendant's motion on the basis of three considerations: (1) the statute of frauds is properly invoked to prevent one from "fraudulently constructing" contracts, and plaintiff here "is clearly not fraudulently constructing a contract in an attempt to bilk defendant"; (2) further discovery was necessary; and (3) the exception of part performance might be invoked to avoid the application of the statute of frauds.

The statute of frauds is not only invoked to prevent fraudulent construction of a written contract but also to prevent disputes over what provisions were included in an oral contract. Plaintiff bases his case on both oral and written contracts.

The only written contract of employment presented in this case specifically provided that the employment was terminable at will. Such contracts are generally held to be indefinite hirings, terminable at the will of either party "in the absence of distinguishing features of provisions or a consideration in addition to the services to be rendered". *Lynas v Maxwell Farms,* 279 Mich 684, 687; 273 NW 315 (1937), *Adolph v Cookware Co of America,* 283 Mich 561, 568; 278 NW 687 (1938), *Hawthorne v Metropolitan Life Ins Co,* 285 Mich 329, 335; 280 NW 777 (1938), *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980).

Under a contract terminable at will, an employee may be terminated with or without cause. *Hernden v Consumers Power Co,* 72 Mich App 349, 356; 249 NW2d 419 (1976). Even an arbitrary and capricious discharge is not actionable under a contract terminable at will. *Hernden v Consumers*

*Power Co, supra.* However, the Supreme Court in *Toussaint* stated:

"Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We hold only that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." *Toussaint, supra,* 610.

Here, as in *Toussaint,* it is for the trier of fact to determine whether the contract was not terminable at will because of the defendant employer's oral or written assurances.

Plaintiff contends that an oral agreement to employ plaintiff until age 65 served to bind defendant. The alleged oral agreement is unenforceable because employment contracts for a term exceeding one year come within the statute of frauds. *McMath v Ford Motor Co,* 77 Mich App 721, 724; 259 NW2d 140 (1977). A contract which is not, by any possibility, capable of being performed within a year is within the statute. *Rowe v Noren Pattern & Foundry Co,* 91 Mich App 254; 283 NW2d 713 (1979). Under the statute, the agreement is void unless in writing and signed by the party to be charged therewith. MCL 566.132(1); MSA 26.922(1), *McMath, supra,* 724.

The doctrine of partial performance, relied upon by the trial court to avoid the application of the statute of frauds, is available in land transactions but is inapplicable to employment contracts. *McMath, supra,* 725.

Plaintiff argued that defendant should be estopped from raising a statute of frauds defense. The elements of equitable or promissory estoppel are: (1) a promise; (2) that the promisor should

reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *McMath v Ford Motor Co, supra,* 725.

Plaintiff alleges that, based on "Defendant Company's literature, policy, and practices, Plaintiff was led to believe that he would be employed until the normal retirement age of sixty-vie *[sic]* (65)". The written contract on which plaintiff seeks to rely contains the previously quoted disclaimer.

The Michigan Supreme Court in *Toussaint v Blue Cross & Blue Shield of Michigan, supra,* 619, held that:

"An employer who establishes no personnel policies instills no reasonable expectations of performance. Employers can make known to their employees that personnel policies are subject to unilateral changes by the employer. Employees would then have no legitimate expectation that any particular policy will continue to remain in force."

Plaintiff in *Toussaint* relied on oral representations and statements in the employer's policy manuals assuring that employees would be dismissed for "cause" only, asserting that his dismissal was not for "cause". In treating the policy manual assertions of Blue Cross as sufficient to give rise to contractual rights in *Toussaint,* the Court found that whether there was "cause" sufficient to justify dismissal was a question for the trier of fact.

The instant case is distinguishable from *Toussaint* because the presence of disclaimers in the policy handbooks may serve to negate the reliance on plaintiff's part which would be justified to

either give rise to a contract or give effect to the doctrine of promissory estoppel. The Supreme Court's decision in *Toussaint, supra,* indicates that where such questions exist, the trial judge acts properly in denying a motion for accelerated judgment and allowing the case to be presented to the jury.

The Court of Appeals in *Kari v General Motors Corp,* 79 Mich App 93; 261 NW2d 222 (1977), held that where the defendant employer specifically stated that its separation and pay schedule and conditions, contained in its handbook, were not intended to establish a contractual relationship, "[a]n employee reading this language and that of the general disclaimer at the end of the booklet should realize that further negotiations, and not merely the acceptance of employment with General Motors, are necessary to create a contract for severance pay". However, the Supreme Court reversed *Kari v General Motors Corp, supra,* by order in lieu of leave to appeal, 402 Mich 926 (1978), remanding the action to the trial court to consider all of plaintiff's claims including claims raised by plaintiff's interpretation of the handbook and possible oral promises to award the separation allowance. This remand may indicate the Supreme Court's belief that under appropriate circumstances, oral promises may negate the effect of disclaimers which are intended to absolve employers from liability for policies presented in handbooks or other employer literature.

Promissory estoppel requires plaintiff to show that his reliance was definite and substantial. In *Pursell v Wolverine-Pentronix, Inc,* 44 Mich App 416; 205 NW2d 504 (1973), plaintiff had been employed by Dow Chemical until he was 59 years old as the manager of one of its plants. The plant was

acquired by defendant. The defendant offered to keep the plaintiff on as general manager, orally promising to employ him as vice-president until he reached retirement at age 65. In reliance on these promises, the plaintiff severed his employment with Dow and accepted the position offered by the defendant. A few years later defendant terminated plaintiff's employment. *Pursell, supra,* 417-418. This Court found that the giving up of his prior employment and the substantial retirement benefits that accompanied it was sufficient reliance to estop the defendant from raising the statute of frauds as a defense. *Pursell, supra,* 419, 420. Likewise, in *Rowe v Noren Pattern & Foundry Co, supra,* 257, the Court found that "plaintiff's giving up of his prior job where he has been employed for 13-1/2 years, and his soon-to-vest retirement benefits constituted a reliance sufficient to circumvent the statute of frauds, at least by raising a question of fact to be resolved by the jury".

In the instant case, plaintiff alleged that, prior to his working for management, he had worked three years for defendant as a union member. By accepting defendant's offer of clerk, plaintiff gave up the security of the union. This, too, would appear to raise at least a question of fact to be determined by the jury. Nor can it be said that defendant should not have reasonably expected to induce such a reliance.

Finally, the handbooks' allusions to the fairness of defendant in any termination or defendant's oral promises, or both, may be required to be enforced in order to prevent injustice.

For the above stated reasons, the trial court's denial of defendant's motion for accelerated judgment based on plaintiff's claim of an implied contract is affirmed.

Plaintiff's Count II alleges that plaintiff was replaced in his position as a superintendent by younger men and that plaintiff was discriminated against on account of his age in violation of Michigan Public Act 453 of 1976; MCL 37.2101; MSA 3.548(101), known as the Elliott-Larsen Civil Rights Act.

Defendant moved for summary judgment asserting that there was no issue of material fact because plaintiff was actually replaced by someone nearly his own age.

GCR 117.2(3) states that a moving party is entitled to summary judgment when:

"(3) that except as to the amount of damages there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law." GCR 1963, 117.2(3).

With regard to this rule, the Michigan Supreme Court has commented:

"The courts are liberal in finding that a 'genuine issue' does indeed exist. As Honigman & Hawkins correctly comments, (1) the court will 'give the benefit of any reasonable doubt to the opposing party' and (2) 'the court must be satisfied that it is impossible for the claim or defense to be supported at trial *because of some deficiency which cannot be overcome.*' (Emphasis added.)" *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973).

Section 202 of the Elliott-Larsen Civil Rights Act provides in pertinent part:

"Sec. 202. (1) An employer shall not:
"(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condi-

tion, or privilege of employment, because of * * * age."
MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).

This statute has been held to create statutory civil rights which may be vindicated by means of a private cause of action. *Holmes v Haughton Elevator Co,* 404 Mich 36; 272 NW2d 550 (1978).

Because there are no Michigan cases which delineate what constitutes a *prima facie* case of age discrimination, it is appropriate to examine the consideration given race discrimination by the appellate courts of this state. This is reasonable because the same statute prohibits both age and race discrimination. There appear to be at least two types of the latter. (1) Disparate treatment. To make a *prima facie* showing of discrimination, the one alleging disparate treatment must show that he was a member of the class entitled to protection under the act and that, for the same or similar conduct, he was treated differently than one who was a member of a different race. *Pompey v General Motors Corp,* 385 Mich 537, 542, 549; 189 NW2d 243 (1971). (2) Intentional discrimination. Here, plaintiff must show that he was a member of the affected class, that he was discharged, and that the person discharging him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him. *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 373, fn 3; 263 NW2d 376 (1977).

In pertinent part, plaintiff's Count II stated as follows:

"11. That Plaintiff was replaced in his position as a Superintendent without offer or transfer compatible with his age, seniority, and work experience, by younger men to wit: Bennie Tucker and Donald Martin.

"12. That by reason of these premises, Plaintiff has

been discriminated against on account of his age in violation of Michigan law, to wit: Michigan Public Act 453 of 1976."

Plaintiff is not alleging disparate treatment. His allegation that he was replaced by younger men indicates that he was discriminated against because of his age; in other words, that the person discharging him was predisposed against plaintiff because of his age and acted on that predisposition.

Defendant insists that plaintiff was only temporarily replaced by two men younger than he. Shortly thereafter, he was permanently replaced by a Gil Miller, a man approximately plaintiff's age. While this tends to undercut plaintiff's assertion of age discrimination, it is not dispositive. It cannot be said that, because plaintiff was not permanently replaced by someone younger than he, it is no longer a question of fact whether defendant discriminated against plaintiff because of age. See *Laugesen v The Anaconda Company,* 510 F2d 307 (CA 6, 1975).

Moreover, there is a question of material fact as to whether Gil Miller was plaintiff's permanent replacement since he occupied the position for approximately one month after which time a reorganization occurred and the position was apparently occupied by Bennie Tucker or John Hayes, both of whom are younger than plaintiff.

Since a question of material fact remained, the lower court properly denied defendant's motion for summary judgment as to Count II.

Plaintiff's Count III alleges that "defendant's demotion of plaintiff was malicious and in bad faith and defendant had a duty to refrain from maliciously and in bad faith demoting and refusing to transfer plaintiff". Count IV alleges that

because of plaintiff's age and the unjust demotion, his employment opportunities are limited and that "Defendant's unwarranted, malicious and bad faith demotion and failure to transfer Plaintiff has interfered with and impaired Plaintiff's opportunities for securing future employment in the field of work that Plaintiff has devoted his adult working life to".

In its motion for summary judgment, defendant argued that plaintiff had failed to state a claim upon which relief could be granted. The lower court denied defendant's motion stating:

"This court must recognize the duty of an employer not to discharge or harass an employee based on characteristics which are immutable. One cannot change one's color, one's sex, nor one's age. This court holds that, upon a proper showing of fact, plaintiff's allegations make out a case under our statutes."

We find that the defendant's motion for summary judgment should have been granted as regards to plaintiff's Count III alleging malicious and bad faith demotion and failure to transfer and Count IV alleging impairment of prospective economic opportunity.

Regarding plaintiff's Count III, a contract for indefinite employment has generally been held to be terminable at will. *Lynas v Maxwell Farms, supra.* This Court has stated that "[s]uch a contract is not violated even by an arbitrary or capricious discharge". *Hernden v Consumers Power Co, supra,* 356. However, this Court has intervened where "the reason for the discharge is an intention on the part of the employer to contravene the public policy of this state". *Sventko v The Kroger Co,* 69 Mich App 644, 647; 245 NW2d 151 (1976). The facts of that case are clearly distinguishable

from the ones in the case at bar. In *Sventko, supra,* plaintiff alleged that she had been terminated as retaliation for her filing a workmen's compensation claim. *Sventko,* 646. The Court conceded that the workmen's compensation statute did not directly prohibit a retaliatory discharge by employers. *Sventko,* 647. But the Court noted that the statute indicated a specific legislative policy the fulfillment of which an employer should not be allowed to discourage. *Sventko,* 647-648. In a concurring opinion, Judge ALLEN noted that appellate courts have used this new exception to termination at will sparingly, "declining to apply it in corporate management disputes or in other situations where *no clear mandate* of public policy is involved". (Emphasis supplied.) *Sventko,* 651. He approved of its application in the case before the Court because the case "concerns a long standing statute whose clear purpose * * * would obviously be violated". *Sventko,* 652.

Subsequent decisions by this Court have continued to locate some legislative enactment before finding a breach of public policy with regard to such discharges. *Trombetta v Detroit T & I R Co,* 81 Mich App 489; 265 NW2d 385 (1978), *lv den* 403 Mich 855 (1978) (where plaintiff alleged his discharge was occasioned by his refusal to falsify pollution control reports required by state law), *Hernden v Consumers Power Co, supra* (where plaintiff alleged his discharge was based on his age in contravention of the then Michigan State Fair Employment Practices Act, MCL 423.301 *et seq.;* MSA 17.458[1] *et seq.).* It would seem that the discharge must contravene "some settled public policy". *Milligan v The Union Corp,* 87 Mich App 179; 274 NW2d 10 (1978). See *Cortez v Ford Motor Co,* 349 Mich 108, 112; 84 NW2d 523 (1957), *Carry*

*v Consumers Power Co,* 64 Mich App 292, 296, fn
1; 235 NW2d 765 (1975).

If, however, plaintiff's contract with the defen-
dant was not terminable at will then his claim
under Count III (malicious and bad faith demotion)
merely restates his claim under Count I (breach of
contract) and accordingly it should have been
struck.

The facts contained in plaintiff's Count IV ap-
pear to state additional damages resulting from
defendant's breach of contract with plaintiff. As
such, it is properly a part of plaintiff's Count I.
Insofar as it states an independent action in tort,
it also fails to state a claim upon which relief can
be granted. Plaintiff is claiming interference with
prospective employment opportunities. This cause
of action may be found in the Restatement of
Torts, 2d, § 766B, p 20:

"One who intentionally and improperly interferes
with another's prospective contractual relation (except
a contract to marry) is subject to liability to the other
for the pecuniary harm resulting from loss of the
benefits of the relation, whether the interference con-
sists of
  "(a) inducing or otherwise causing a third person not
to enter into or continue the prospective relation or
  "(b) preventing the other from acquiring or continu-
ing the prospective relation."

This tort would include the interference with the
prospect of obtaining employment. Restatement of
Torts, 2d, *supra,* Comment c, p 22. Plaintiff can
show the tort only if he also prevails regarding
Count I.

In addition, courts in other jurisdictions, which
have considered the matter, have looked to see
whether the expectation of economic advantage

allegedly interfered with was a reasonable one, *O'Fallon Development Co, Inc v City of O'Fallon,* 43 Ill App 3d 348; 2 Ill Dec 6; 356 NE2d 1293 (1976), *Parkway Bank & Trust Co v City of Darien,* 43 Ill App 3d 400; 2 Ill Dec 234; 357 NE2d 211 (1976), *Behrend v Bell Telephone Co,* 242 Pa Super 47; 363 A2d 1152 (1976). Of importance is whether the plaintiff alleges interference with specific third parties or an identifiable prospective class of third persons. *Parkway Bank & Trust Co v City of Darien, supra.* In the instant case, plaintiff failed to indicate what, if any, *specific* and *reasonable* prospective economic advantage was interfered with. Like the Court in *Behrend, supra,* this Court could conclude that plaintiff failed to make a proper showing of what reasonable economic advantage was lost:

"The tort of intentional interference with business requires, as a basis, that a business relationship be proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking. It is true that where a prospective advantage is alleged, the plaintiff need not demonstrate a guaranteed relationship because 'anything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. This must be something more than a mere hope or the innate optimism of the salesman.'

\* \* \*

"As defined by the courts in this Commonwealth, the tort contemplates a relationship, prospective or existing, of some substance, some particularity, before an inference can arise as to its value to the plaintiff and the defendant's responsibility for its loss." (Citations omitted.) *Behrend v Bell Telephone Co, supra,* 62.

Because plaintiff failed to assert a specific and

reasonable economic advantage that was injured by defendant's actions, plaintiff failed to assert a claim upon which relief may be granted. Defendant's motion for summary judgment as to Count IV should be granted.

Plaintiff's fifth count alleges that defendant periodically reviewed plaintiff's job performance and so had a duty to do so "in an objective manner" and, by not evaluating plaintiff in an objective manner, plaintiff was thereby denied placement on defendant's list which would have assured a promotion.

Defendant moved for summary judgment as to Count V because of plaintiff's failure to state a claim upon which relief could be granted. The lower court denied defendant's motion. The lower court's reason for the denial was that even though the court would not impose a duty to evaluate plaintiff's performance on defendant, "in fact, such evaluations were undertaken, and that the duty involved was one to undertake to do the evaluations fairly, and in a manner which would not interfere with plaintiff's opportunities. Defendant's claim that there was no duty to make evaluations is obviated by the fact that such evaluations were undertaken, and it is their character and fairness that is under attack."

In *Hart v Ludwig,* 347 Mich 559, 564; 79 NW2d 895 (1956), the Michigan Supreme Court cited the following language with approval:

"The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies."

This duty arises only where defendant attempts to

do something, even gratuitously, *for another.* We find that Ford's evaluation of plaintiff was for the benefit of both parties. A duty to exercise reasonable care may arise out of a contract. *Hart v Ludwig, supra,* 565, *Clark v Dalman,* 379 Mich 251, 261; 150 NW2d 755 (1967), *Williams v Polgar,* 391 Mich 6, 19; 215 NW2d 149 (1974), *Crews v General Motors Corp,* 400 Mich 208, 226; 253 NW2d 617 (1977) (WILLIAMS, J., for reversal). "[A]ccompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and * * * negligent performance constitutes a tort as well as a breach of contract." *Clark v Dalman, supra,* 261, *Williams v Polgar, supra,* 19, *Crews v General Motors Corp, supra,* 226.

We find that where the trier of fact is allowed to determine whether the contract was terminable at will or whether defendant and plaintiff had a binding contract which was breached by defendant (Count I), the issues of defendant's negligence in carrying out the evaluations of plaintiff's performance should also be determined by the trier of fact.

While plaintiff uses the terms "objective" and "subjective", the lower court properly interpreted his claim to mean that the evaluations were unfair. The "subjective manner" of evaluation of which plaintiff complains is the equivalent of arbitrary and capricious conduct. Accordingly, if plaintiff has stated a proper claim in Count I (breach of employment contract), he has stated an adequate claim of negligence in Count V. Should the trial court determine that plaintiff's contract with Ford was terminable at will, so that even arbitrary and capricious termination is permissible, then defendant's motion for summary judgment with regard to Count V should be granted.

Affirmed in part and reversed in part. No costs.

W. A. PORTER, J., concurred.

BEASLEY, P.J. *(concurring in part and dissenting in part)*. I agree with the majority that the within case is distinguishable from *Toussaint v Blue Cross & Blue Shield of Michigan*[1] because of the presence of the following provision in plaintiff's written employment agreement with defendant: "I understand that my employment is not for any definite term and may be terminated at any time, without advance notice by either myself or Ford Motor Company".

Thus, I would believe that *Toussaint* does not require the result reached by the majority. Under *Lynas v Maxwell Farms*,[2] I believe summary judgment should have been granted and, accordingly, would reverse the trial court in that respect.

Regarding Counts I through V, I concur with the majority.

---

[1] 408 Mich 579; 292 NW2d 880 (1980).

[2] 279 Mich 684; 273 NW 315 (1937).