886 F.2d 1316
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles B. TILLER, Plaintiff-Appellant,
v.
84 LUMBER COMPANY, Defendant-Appellee.
 No. 88-2164.
 United States Court of Appeals, Sixth Circuit.
 Oct. 10, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Charles Tiller appeals the district court's grant of summary judgment in favor of his former employer, defendant-appellee 84 Lumber Company ("the Company"), and he also appeals the district court's denial of his motion for leave to amend his complaint to add an ERISA claim. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Tiller was first employed by the Company as a store manager trainee and then as a "comanager" (assistant manager) from December 1983 until December 1986. He initiated this action by filing his complaint on August 13, 1987, and he filed amended complaints on August 28, 1987, and October 6, 1987. He alleged that the termination of his employment violated the Elliott-Larsen Civil Rights Act, M.C.L.A. 37.2101-.2804, and breached his implied employment contract. He also brought claims of intentional infliction of emotional distress, negligence, and interference with contractual rights. The Company denied Tiller's allegations and raised a variety of affirmative defenses.
 
 
 3
 Tiller was deposed on December 9, 1987, and July 22, 1988. Discovery ended on August 1, 1988; the motion cut-off date was September 1, 1988; and the case was set on the district court's October-December trial docket.
 
 
 4
 On August 17, 1988, Tiller filed a motion to strike the Company's claimed affirmative defense that Tiller's state law claims were preempted by ERISA, 29 U.S.C. Secs. 1001-1461, or, in the alternative, Tiller applied for leave to amend his complaint to make it "consistent with ERISA's civil remedy scheme." On August 29, 1988, the Company filed a brief in opposition to Tiller's motion to strike or amend.
 
 
 5
 On September 1, 1988, the Company moved for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and 56. On September 21, 1988, Tiller filed a brief in opposition to the Company's motion, and on October 3, 1988, he filed his and his wife's affidavits.
 
 
 6
 On October 20, 1988, the district court heard oral argument on both the parties' motions. At the conclusion of argument, the district court ruled from the bench, denying Tiller's motion and granting summary judgment in favor of the Company. This timely appeal followed.
 
 B.
 
 7
 Tiller applied for a job with the Company on September 29, 1983, and was interviewed twice by regional supervisor Chuck Wells. In his deposition, Tiller testified that he did not remember whether the first interview lasted ten minutes or an hour, and he did not remember what took place at the interview or what was said, except that Wells said the Company did not lay off employees and "after fifteen years, you can retire with a million dollars." Similarly, Tiller testified that he did not remember when his second interview took place or what was said, other than he would work in the Lansing, Michigan, store.
 
 
 8
 On December 31, 1983, Tiller began working as a manager-trainee in Lansing with store manager Larry Nicolai. Tiller testified on discovery deposition that Nicolai said that the only causes for discharge were excessive absenteeism and theft. There was also a Company list of "don'ts," none of which Tiller could recall at the time of his deposition. On January 12, 1984, Tiller signed a one-page agreement which set out the terms of his compensation as a trainee. The agreement stated in part:
 
 
 9
 The employee agrees faithfully to perform all duties to the best of his ability, and shall not be engaged in any other business activity during his employment. Violation of matters contained herein or in the Policy & procedure Manual is grounds for immediate dismissal, in addition to inefficiency or lack of conscientious attitude, as determined in the sole judgment of the company. However, it is distinctly understood that the duration of employment is unspecified and solely rests in the discretion of the company.
 
 ACCEPTED:
 
 10
 /s/
 
 
 11
 (emphasis added).
 
 
 12
 In March 1985, Tiller was promoted to comanager and transferred to the Jackson, Michigan store, which was managed by Bill Baker. Tiller was the store's only black employee. After Tiller had been in Jackson for several months, the area manager, Chuck Wells, was replaced by Tom Wymore. Wymore visited the Jackson store once in 1985 and three times in 1986. On his first visit in November 1985, Wymore introduced himself to the staff. Tiller contends that in his subsequent visits, Wymore harassed him and chastised him in front of the store staff, with the goal of "railroading" him out of his job.
 
 
 13
 In January 1986, Baker told Tiller that Wymore had instructed him "to get rid of" Tiller because he did not think Tiller could "cut it," and that Wymore had told Baker to "document every little mistake" that Tiller made. Tiller testified that he believed that Wymore did not subject other supervisory personnel to such scrutiny. Tiller also once overheard Wymore utter the phrase "dumb, stupid nigger" in a telephone conversation.
 
 
 14
 Tiller testified he realized Wymore wanted to fire him, but he did not believe Wymore could as long as the store was profitable. However, Tiller also testified that "several times" Wymore warned him that he could do "whatever he wants" with the stores he supervised, and he could fire employees at will.
 
 
 15
 During the spring of 1986, Tiller's wife gave birth to twins under severe medical circumstances, and only one daughter survived. Tiller's daughter's medical bills exceeded $200,000 within the first 18 months of her life, and Tiller testified that Wymore made numerous references to the cost of his daughter's medical care and the burden it placed on the Company, which was self-insured.
 
 
 16
 In September 1986, Jill Freeland began working as a part-time cashier at the Jackson store, where she was the only female employee. Between September and December 1986, Tiller touched Freeland on several occasions in what he described as "[g]eneral horseplay that went on among all of us." Tiller testified he elbowed Freeland on the arm, had her sit on his lap twice, picked her up and turned her upside down once, and slapped her on the buttocks once.
 
 
 17
 On Friday, December 5, 1986, Freeland went to the store to pick up her paycheck. Tiller was the only employee in the store. He testified that at that time, he confronted Freeland about her excessive absenteeism, which the two had discussed before.
 
 
 18
 On the following Monday, Tiller was home having lunch when store manager Baker notified him that Freeland had lodged a complaint of sexual harassment against him. Tiller went back to work and called Freeland. He testified that he asked Freeland if she had filed a complaint, and she responded that she had and she was tired of Tiller "manhandling her." When Tiller asked her to elaborate, Freeland repeated that she was tired of him "manhandling" and "fondling" her. Tiller responded that there would be no more horseplay in the store. Tiller also testified that he said:
 
 
 19
 Damn, Jill, I'm tired of you being late. I'm tired of you calling in sick. I'm tired of you wanting to leave early.... Damn, Jill, if you don't bring me an excuse, you cannot--you no longer have employment here."
 
 
 20
 Tiller said Freeland's boyfriend then got on the telephone and threatened him. After Tiller spoke with Freeland and her boyfriend, Freeland made a second call to the Company's corporate headquarters and complained that Tiller had used profanity and had threatened both her and her boyfriend.
 
 
 21
 Approximately two weeks later, Wymore went to the Jackson store and fired Tiller. Wymore explained the Company would not tolerate managers who used profanity and threatening language against employees and their boyfriends, or otherwise interferred with an employee's attempt to file a complaint. Tiller denied using profanity or making threatening comments, but Wymore said the Company had decided to fire him.
 
 
 22
 Tiller raises several issues in this appeal: whether the district court erred in granting summary judgment on his claims for breach of implied employment contract, violation of Michigan's Elliott-Larsen Civil Rights Act, intentional infliction of emotional distress, and negligence; and whether the district court erred in declining to consider his and his wife's affidavits in denying his motion to strike or amend.
 
 II.
 
 23
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. Pinney Dock and Transport Co. v. Pennsylvania Central Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 109 S.Ct. 196 (1988). In its review, this court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). Yet, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings, but must come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 III.
 A.
 
 24
 In granting the Company's motion for summary judgment, the district court did not consider Tiller's affidavit because it was of the opinion that it fell within Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir.1986), which held that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." Tiller insists that the district court erred in disregarding his affidavit.
 
 
 25
 Tiller stated in his affidavit that Chuck Wells orally promised him that he was guaranteed a job with the Company as long as he performed his duties. Tiller further stated "[t]hat he believed he had a contract of employment with 84 Lumber Company wherein he could not be discharged from his employment without good cause." Lenise Tiller stated in her affidavit that she heard Wells promise that her husband "was guaranteed a job with 84 Lumber Company as long as he performed the duties of his job," and his job was his "as long as he wanted it."
 
 
 26
 Fed.R.Civ.P. 56(e) provides the standard for affidavits filed in a motion for summary judgment:
 
 
 27
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
 
 
 28
 Parties cannot defeat a motion for summary judgment by attempting to create genuine issues of material fact through affidavits that amount to "merely conclusory reiterations of the allegations of the complaint" and which are not made on personal knowledge, Roslindale Co-op. Bank v. Greenwald, 638 F.2d 258, 261 (1st Cir.), cert. denied, 454 U.S. 831 (1981), or "through affidavits that contradict their own depositions." Miller v. A.H. Robins Co., 766 F.2d 1102, 1104 (7th Cir.1985). As this court noted in Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir.1984):
 
 
 29
 If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.
 
 
 30
 (quoting Perma Research & Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.1969).
 
 
 31
 A comparison of Tiller's affidavit and his deposition testimony reveals several conflicts. In regard to his meetings with Chuck Wells, Tiller testified he did not recall if his initial interview lasted ten minutes or an hour and he did not recall what took place during the interview. Similarly, Tiller testified that he did not remember when his second interview took place or what was said, other than he would work in Lansing.
 
 
 32
 There is no claim that Tiller was confused at his deposition, nor is there any allegation of newly discovered evidence. Tiller offers no explanation of why he was suddenly capable, under the pressure of a motion for summary judgment, of recalling specific oral promises that would be necessary to prove his claim. Thus, Tiller's affidavit presents this court with that type of affidavit rejected in Reid--an affidavit, filed after a motion for summary judgment has been made which, without explanation, is inconsistent with prior deposition testimony. For this reason, we find the district court did not err in disregarding Tiller's affidavit.
 
 
 33
 Tiller also argues that because his personal counsel did not question him at the deposition, he and his attorney are entitled to submit affidavits telling "their side of the story." This argument fails for several reasons. First, there is nothing in Reid which rejects a party's contradictory affidavit based upon his attorney's inaction in a prior deposition. Moreover, Tiller specifically alleged in his complaint that his contract claim was based on the terms of the Company's policy manual; he never alleged a basis in any oral promises. Seen in this light, Tiller's argument boils down to the assertion that an attorney should be permitted to "sandbag" opposing parties in depositions, then "spring" an alleged factual basis for a claim in an affidavit after discovery has closed. Clearly, this cannot be tolerated.
 
 
 34
 Tiller also argues that the district court should have considered his wife's affidavit, as she was not deposed, and therefore her affidavit did not conflict with any prior testimony. The district court never specifically dealt with Lenise Tiller's affidavit. Yet assuming the district court disregarded Lenise Tiller's affidavit, and erred in doing so, that error was harmless because her affidavit pertains only to matters which the plaintiff did not plead nor allege, and which are therefore outside the scope of the complaint and irrelevant.
 
 B.
 
 35
 Tiller argues that the district court erred in granting summary judgment on his claim of breach of an implied agreement that the Company would fire employees only for good cause. Tiller asserts the record is filled with "[t]he evidence of the expressions of a contract...." Appellant's Brief at 9. By the time he confronted the Company's summary judgment motion, Tiller apparently finally realized that the matter of oral representations was a "fertile field to plow." However, in this appeal he finds many "expressions of a contract," but in his complaint he specifically listed only the Company's policy manual as the source of the terms of the alleged implied contract. Therefore, his allegations of oral representations fall outside the complaint and are immaterial to this action.
 
 
 36
 Tiller also testified that Wymore repeatedly threatened that "he could dismiss [Tiller] over nothing." Tiller argues that he was only acknowledging a comment made by Wymore and not conceding its truthfulness. Tiller's refusal to believe his superior, however, is irrelevant, as his individual belief that his supervisor spoke untruthfully does not provide him with "legitimate expectations grounded in an employer's written policy statements ... [that] give rise to an enforceable contract." Toussaint v. Blue Cross & Blue Shield, 408 Mich. 578, ----, 292 N.W.2d 880, 884 (1980). See Boynton v. TRW, Inc., 858 F.2d 1178, 1187 (6th Cir.1988) (en banc) (an employee's subjective expectation does not create an enforceable contract right).
 
 C.
 
 37
 Tiller filed his second amended complaint on October 6, 1987. The Company responded with an answer setting out affirmative defenses on October 13, 1987, including affirmative defense "Y," which asserted that "[p]laintiff's state statutory or state common laws claims are preempted by federal law, including the Employee Retirement Income Security Act (ERISA)." Nearly a year later, on August 17, 1988, Tiller filed a motion to strike affirmative defense "Y" or, in the alternative, "for leave to amend the complaint consistent with ERISA's civil remedy scheme."
 
 
 38
 Absent consent of the Company, Tiller could amend his complaint for a third time only by leave of the court. Fed.R.Civ.P. 15(a). Although such leave "shall be freely given when justice so requires," id., whether to grant such leave "is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971). In reviewing the district court's denial of Tiller's motion, we are mindful that "[d]elay that is not intended to harass the defendant is not in itself a permissible reason to refuse leave to amend." Janikowski v. Bendix Corp., 823 F.2d 945, 951 (6th Cir.1987). This court has also held that factors such as undue delay, bad faith or futility of amendment must always be considered in conjunction with " 'at least some significant showing of prejudice to the opponent' if the motion is to be denied." Janikowski, 823 F.2d at 951 (emphasis added) (quoting Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir.1986)).
 
 
 39
 The district court apparently denied Tiller's motion based on undue delay and futility of amendment. Yet the Company has never argued it would be prejudiced by the granting of the motion, and the district court neither required a showing of prejudice nor made any finding with regard to it. A review of the record, however, indicates that any flaws in the district court's ruling amounted to, at most, harmless error, as prejudice to the Company is implicit in the record. See Fed.R.Civ.P. 61; McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984).
 
 D.
 
 40
 Tiller next argues that the district court erred in granting summary judgment on his claim that Wymore's alleged harassment and the Company's dismissal constituted a violation of Michigan's Elliott-Larsen Civil Rights Act, M.C.L.A. Secs. 37.2101-.2804 (1985). Under Michigan law, plaintiffs may establish a prima facie case of discrimination by showing (i) disparate treatment or (ii) intentional discrimination. Schipani v. Ford Motor Co., 102 Mich.App. 606, 617, 302 N.W.2d 307, 312 (1981). The district court found Tiller failed to present any evidence to support a claim of disparate treatment, and the only evidence Tiller produced that Wymore intentionally discriminated against him was his uttering, on one occasion, the phrase "dumb, stupid nigger," and that this evidence was mitigated by Tiller's admissions that he did not know if the term was directed at him or to whom Wymore was speaking on the telephone.
 
 
 41
 After reviewing the record in this case, we agree with the district court's disposition of Tiller's civil rights claim. See Davis v. Monsanto Chemical Co., 858 F.2d 345, 347-48 (6th Cir.1988), cert. denied, 109 S.Ct. 3166 (1989).
 
 E.
 
 42
 Tiller next argues that the district court erred in granting summary judgment on his claim of intentional infliction of emotional distress. He alleges that the Company terminated him because of his daughter's health costs and his race, and this termination amounts to outrageous conduct which caused him to lose self-esteem, become depressed, and otherwise suffer great damages. The district court found Tiller's allegations did not meet Michigan's standard for outrageous conduct, and we agree. Finally, we agree that the district court did not err in granting summary judgment on Tiller's groundless claim of negligence.
 
 IV.
 
 43
 Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.