**In re BASEBALL BAT ANTITRUST LITIGATION (MDL No. 1249).**

**This Document Applies To:**

**Baum Research, et al. v. Hillerich & Bradsby Co., Inc., et al., (No. 99–2112–KHV).**

**No. 98–MC–1249–KHV.**

United States District Court, D. Kansas.

Oct. 28, 1999.

Cathy J. Dean, Jeffrey B. Rosen, Christopher Swafford, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, Bruce Keplinger, Norris, Keplinger & Herman, L.L.C., Overland Park, KS, David A. Ettinger, Honigan Miller Schwartz & Cohn, Detroit, MI, David L. Nelson, Patrick B. McCauley, David J. Szymanski, Sommers, Schwartz, Silver & Schwartz, P.C., Southfield, MI, Christopher E. Ondeck, Salvatore A. Romano, Jenkens & Gilchrist, P.C., Washington, DC, for Plaintiffs.

Craig T. Kenworthy, James A. Durbin, Swanson Midgley, LLC, Kansas City, MO, Gregory L. Curtner, Julie P. Close, Mark T. Boonstra, Susan I. Robbins, Miller, Canfield, Paddock & Stone, P.C., Ann Arbor, MI, Karen Z. Schutter, National Ass'n of Ins. Com'rs, Kansas City, MO, John K. Power, Husch & Eppenberger, Kansas City, MO, John K. Bush, Christie A. Moore, Peggy B. Lyndrup, Greenebaum, Doll & McDonald, PLLC, Louisville, KY, Barbara L. Goldman, Dykema Gossett PLLC, Bloomfield Hills, MI, Bruce Keplinger, Norris, Keplinger & Herman, L.L.C., Overland Park, KS, John M. Peterson, Jonathan T. Howe, Howe & Hutton, Ltd., Chicago, IL, Frank M. Northam, Arthur L. Herold, Webster, Chamberlain & Bean, Washington, DC, Dennis Barnes, Eugene Driker, Barris, Sott, Denn & Driker, PLC, Detroit, MI, for Defendants.

### *MEMORANDUM AND ORDER*

VRATIL, District Judge.

Following a transfer order of the judicial panel on multidistrict litigation under 28 U.S.C. § 1407, the Court has jurisdiction over consolidated pretrial proceedings in these actions. This matter comes before the Court on *Motion For Reconsideration And To Amend The Complaint* (Doc. # 53) which the Baum plaintiffs filed December 4, 1998 in *Baum Research & Dev. Co. v. Hillerich & Bradsby Co., Inc.,* Case No. Civ.A. 99–2112–KHV.

Pursuant to E.D.Mich. Local Rule 7.1(g)(3), plaintiffs seek reconsideration of the order of the United States District Court for the Eastern District of Michigan which dismissed their state and federal antitrust claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Pursuant to Rule 15(a), Fed.R.Civ.P., plaintiffs also seek leave to amend their antitrust claims and claims for tortious interference. For reasons stated below, plaintiffs' motion is sustained in part and overruled in part.[1]

### *Procedural Background*

On July 13, 1998, Steve Baum and Baum Research and Development Company [col-

---

1. Because jurisdiction over consolidated pretrial proceedings lies in this transferee Court, we apply the Rules of Practice and Procedure of this district. *See, e.g., Van Dusen v. Barrack,* 376 U.S. 612, 639 n. 40, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (although transferee court must apply substantive law of transferor, "the transferee District Court may apply its own rules governing the conduct and dispatch of cases in its court."). As discussed below, however, the Court would reach the same result under the local rules of either court.

lectively "Baum"] filed a complaint against Hillerich & Bradsby Co., Inc. ["H & B"], Easton Sports, Inc. ["Easton"], Worth, Inc., the National Collegiate Athletic Association ["NCAA"], and the Sporting Goods Manufacturers Association ["SGMA"], claiming violations of state and federal antitrust laws and tortious interference with contractual relations and prospective economic advantage in violation of state law.[2] *See Complaint* (Doc. # 1) filed July 13, 1998 in Case No. Civ.A. 99–2112–KHV.

On November 19, 1998, the United States District Court for the Eastern District of Michigan dismissed Baum's state and federal antitrust claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Assuming that Baum had suffered injury as a result of defendants' antitrust violations, it held that Baum's injury was not the result of any anticompetitive effect on the market; rather, Baum's injury stemmed from competition itself. The Michigan court further held that Baum had not pleaded actionable claims for tortious interference, and directed Baum to amend the complaint to better describe the specific expectation of an economic relationship. The court held that if Baum should fail to sufficiently amend those claims, the court would dismiss them.

Baum filed the present motion on December 4, 1998. Five days later, on December 9, 1998, the judicial panel on multidistrict litigation transferred the Baum action to this Court pursuant to 28 U.S.C. § 1407.[3]

### *Applicable Standards*

#### 1. Motion To Reconsider

 The Court has discretion whether to grant or deny a motion to reconsider.[4] *See Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988); *Shinwari v. Raytheon Aircraft Co.,* 25 F.Supp.2d 1206, 1208 (D.Kan.1998). The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice. *See Shinwari,* 25 F.Supp.2d at 1208. *See also Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan. 1990) (motion to reconsider appropriate when court has obviously misapprehended party's position, facts, or applicable law, or when party introduces new evidence that could not have been obtained through exercise of due diligence). A motion to reconsider is not a second chance for the

---

2. Baum has abandoned the claim for tortious interference with contractual relations. *See Memorandum In Support of [Baum's] Motion For Reconsideration And To Amend The Complaint* (Doc. # 52) filed December 4, 1998 in Case No. Civ.A. 99–2112–KHV, at 1 n. 1.

3. Section 1407(a) provides:

When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred [by the judicial panel on multidistrict litigation] to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made ... for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously termi-

nated: Provided, however, that the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

4. The Federal Rules of Civil Procedure do not recognize motions for reconsideration. *See Hatfield v. Board of County Comm'rs,* 52 F.3d 858, 861 (10th Cir.1995); *Loum v. Houston's Restaurants, Inc.,* 177 F.R.D. 670, 671 (D.Kan.1998). While the Rules of Practice and Procedure for the District of Kansas contain a provision entitled "Motions to Reconsider," D.Kan.Rule 7.3, this provision is intended to apply only to non-dispositive judgments and orders. *See Loum,* 177 F.R.D. at 671. Nevertheless, a motion to alter or amend is essentially a motion for reconsideration. *See Hilst v. Bowen,* 874 F.2d 725, 726 (10th Cir.1989); *Koch v. Shell Oil Co.,* 911 F.Supp. 487, 489 (D.Kan.1996).

losing party to make his strongest case or to dress up arguments that previously failed. *See Shinwari,* 25 F.Supp.2d at 1208 (citing *Voelkel v. General Motors Corp.,* 846 F.Supp. 1482, 1483, *aff'd* 43 F.3d 1484 (10th Cir.1994)). Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. *See id.* (citing *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992)).[5]

## 2. Amendment Of Pleadings

■ *Under Rule 15(a), Fed.R.Civ.P., a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. Otherwise a party may amend its pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. After the district court enters judgment on a motion to dismiss, plaintiff no longer may amend its complaint as of right, and may only do so with leave of the Court. *See Glenn v. First Nat'l Bank in Grand Junction,* 868 F.2d 368 (10th Cir.1989) (after district court granted motion to dismiss, appellants could have amended their complaint only by leave of court or by written consent of adverse party). *See also Smith v. National Collegiate Athletic Ass'n,* 139 F.3d 180, 189 (3d Cir.1998) ("[a]fter the district court

enters judgment on a motion to dismiss, a plaintiff no longer may amend [its] complaint as of right," and may only do so with leave of court) (citations omitted), *vacated on other grounds,* 525 U.S. 459, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999). The Court may refuse to grant leave to amend where, for example, the proposed amendment would be futile. *See Jefferson County School Dist. No. R–1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848, 858–59 (10th Cir.1999) (notwithstanding Rule 15(a) requirement that leave to amend shall be given freely, district court may deny leave to amend where amendment would be futile and proposed amendment is futile if amended complaint would be subject to dismissal).

### *Factual Background*[6]

In this case, the relevant market is the market for amateur baseball bats, which includes but is not limited to college baseball. Baum manufactures wood composition baseball bats. H & B, Easton and Worth [collectively, "bat manufacturers"] manufacture aluminum baseball bats. The SGMA is a not-for-profit trade association of bat manufacturers. The NCAA is an association of colleges and universities that participate in intercollegiate athletics. Among other things, the NCAA adopts and promulgates playing rules.

Ninety percent of the market uses aluminum bats which defendant manufactur-

---

5. Eastern District of Michigan Rule 7.1(g)(3) sets forth a similar standard:

 Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

 E.D.Mich. Local Rule 7.1(g)(3).

6. The Court derives this factual background from the Michigan court's opinion which dismissed the Baum complaint. *See Baum Research and Dev. Co. v. Hillerich & Bradsby Co.,* 31 F.Supp.2d 1016 (E.D.Mich.1998). Where appropriate, the Court notes additional factual allegations set forth in the Baum *Complaint* (Doc. # 1) filed July 13, 1998 in Case No. Civ.A. 99–2112–KHV and Baum's *[Proposed] First Amended Complaint* (Doc. # 50) filed March 8, 1999 in this consolidated action, *In re Baseball Bat Antitrust Litigation,* Case No. 98MC1249–KHV.

**1194**

ers produce, and they have signed exclusive contracts to provide baseball bats to various college teams. Wood bats cost less, but Baum implicitly acknowledges that defendants' aluminum bats outperform wood bats. NCAA rules allow both wood and aluminum bats in NCAA-sanctioned baseball games. During the relevant period, NCAA rules did not restrict bat performance. According to Baum, the NCAA rules (or lack thereof) were the product of a conspiracy to squeeze its wood composition bat out of the market. In particular, Baum alleges that the bat manufacturers conspired to eliminate competition from the market by (1) engaging in exclusive arrangements with colleges, universities and coaches to foreclose these teams from using competing products, and (2) cooperating with SGMA and the NCAA to manipulate and control the standard-setting function of the NCAA Baseball Rules Committee ["Rules Committee"] to establish unreasonable bat performance standards that excluded wood or wood composition bats from competition.

### Analysis

Baum brings suit against the NCAA, the bat manufacturers and the SGMA, claiming violations of federal and state antitrust laws and tortious interference in violation of state law. The gravamen of Baum's complaint is that to perpetuate their dominance and exclude Baum from the market for amateur baseball bats, aluminum bat manufacturers conspired with the NCAA to manipulate the standard for baseball bats used in NCAA-sanctioned baseball games. In a nutshell, the theory is that because of lax NCAA standards which allowed aluminum bats, Baum could not sell wood composition baseball bats in the amateur baseball bat market. According to Baum, the lax standards stemmed from a

conspiracy between the bat manufacturers, SGMA and the NCAA and the conspiracy violated federal and state antitrust law.[7]

Baum's theory of tortious interference with business relationships and prospective economic advantage is that the bat manufacturers and the SGMA engaged in a concerted campaign to remove and destroy Baum's bats, "sideline" the Baum Hitting Machine, prevent Baum from establishing relationships with amateur baseball teams, and disrupt Baum's sales to minor league professional baseball teams.

Baum seeks reconsideration of the order which dismissed its antitrust claims as well as leave to amend those claims. Specifically, Baum seeks reconsideration of the Michigan court's dismissal of the state and federal antitrust claims on the ground that "additional events have taken place which directly bear on and support" those claims. *Motion For Reconsideration And To Amend The Complaint* at 2. Baum also seeks "to amend, clarify and streamline" its antitrust claims "based on the former rulings of [the Michigan] Court, the factual information set forth in Steve Baum's Affidavit, and the new facts that have taken place after the filing of the original Complaint and to more clearly set forth the nature of the antitrust violation and antitrust injuries Plaintiffs have sustained." *Id.* at 3.

### I. Motion To Reconsider The Dismissal Of Baum's State And Federal Antitrust Claims

#### A. Antitrust Injury

■ The United States District Court for the Eastern District of Michigan dismissed Baum's antitrust claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6). The court held that the Baum

---

7. The analysis is the same for Baum's state antitrust claims and federal antitrust claims. *See* Mich.Comp.Laws 445.784(2) (in construing Michigan Antitrust Reform Act, courts shall give "due deference to interpretations given by federal courts to comparable antitrust statutes....").

complaint failed to properly allege anti-trust injury, in that Baum's injury did not result from any anticompetitive effect on the market; rather, Baum's injury stemmed from competition itself.

Baum argues that since the Michigan court dismissed its antitrust claims, "additional events have taken place which directly bear on and support" those claims. **Motion For Reconsideration And To Amend The Complaint** at 2. In particular, Baum notes that the NCAA Rules Committee adopted a "new bat rule" on July 14, 1998. The new rule established off-the-bat ball speed limitations at "wood-like levels" and "had the market effect of permitting wood, wood composition and wood-like bats to compete." *Id.* Baum contends that the new rule has caused "a substantial increase in competition and now wood and wood composition bat manufacturers are competing with aluminum bat manufacturers," *id.* at 3, thus establishing that "the absence of the new performance standard changes did not foster competition; rather, it had the effect of stifling competition and limiting competition" to aluminum bat manufacturers. *Memorandum In Support of [Baum's] Motion For Reconsideration And To Amend The Complaint* at 4.

Baum further notes that after the NCAA adopted the new rule, Easton sued the NCAA in this Court, claiming that the new rule violated Section 1 of the Sherman Act.[8] According to Baum, the Easton complaint contains "a number of admissions which support" the Baum claims. The gist of Easton's complaint, says Baum, is that Easton has been injured by the new bat rule because Easton "no longer controls and manipulates the NCAA rule-making process to its benefit." *Id.* at 5.

Likewise, Baum notes that the NCAA has filed a declaratory judgment complaint against Hillerich & Bradsby, Worth and Baum, and that it contains admissions which support Baum's claims. *See National Collegiate Athletic Ass'n v. Hillerich & Bradsby, Co., Inc., et al.*, No. 99–2367–KHV. Baum contends that the NCAA complaint makes it clear that the NCAA had the "duty and authority to promulgate rules or standards designed to insure player safety and the integrity of the game," and that defendants' conspiracy to obstruct the NCAA from enacting a rule "did not foster competition unless it can be found that the NCAA neither had the duty nor the authority to do so." *Id.* at 5.

Finally, Baum contends that "Easton has now falsely disparaged the Baum Hitting Machine and has threatened to sue college teams or coaches who have signed exclusive use contracts with Baum if they switch to wood or wood composition bats or fail to use Easton's high performance aluminum bats." *Id.*

Even assuming that this "new evidence" was unavailable, the Court is not persuaded that it justifies a different outcome. Inclusion of the "new evidence" does not alter the flawed theory of antitrust injury which the evidence purports to support. This Court agrees with the Michigan court that "there is a logical inference that the absence of a rule regulating bat performance actually fosters competition." *Baum Research & Dev. Co. v. Hillerich & Bradsby Co.*, 31 F.Supp.2d 1016, 1022 (E.D.Mich.1998). The Michigan court properly pointed out that "the main purpose of the antitrust laws is to preserve and promote competition," and "[w]hether or not a particular practice violates the antitrust laws is determined by its effect on *competition,* not its effect on a *competitor.*" *Id.* at 1021 n. 7 (quoting *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 825 (6th Cir.1982)) (emphasis

---

**8.** On September 29, 1999, the Court dismissed the *Easton Sports, Inc. v. National Collegiate Athletic Ass'n* case, No. 98–2351– KHV. *See Stipulation And Order Dismissing Case With Prejudice* (Doc. # 144) filed Sept. 29, 1999.

added).[9] *See also Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (antitrust laws were enacted for protection of "competition not competitors"). The Michigan court therefore correctly concluded that "Baum has failed to state an antitrust claim upon which relief can be granted because it can prove no set of facts to show that it suffered an antitrust injury." *Baum,* 31 F.Supp.2d at 1022.

Baum also uses an array of antitrust buzzwords to argue that its "new evidence" establishes, *e.g.,* "the onset of the conspiracy," "predatory" "exclusionary" and "overt acts" and control of the "cartel market," "dominant market power" by the NCAA, and "before and after market conditions." Taken as a whole, Baum's convoluted arguments essentially re-argue the issue which the Michigan court has already decided. A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed. *See Shinwari,* 25 F.Supp.2d at 1208 (citing *Voelkel v. General Motors Corp.,* 846 F.Supp. 1482, 1483, *aff'd* 43 F.3d 1484 (10th Cir.1994)). Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. *See id.* (citing *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51, (1992)). *See also* E.D.Mich. Rule 7.1(g)(3) (motions for reconsideration which merely present same issues ruled upon by court, either expressly or by reasonable implication, shall not be granted).

To the extent that Baum's motion for reconsideration implicitly claims the need to correct clear error or prevent manifest injustice, the foregoing analysis is equally applicable. As noted, the Michigan court's opinion was thoughtful, well-reasoned and—in this Court's view—entirely correct. None of the arguments which Baum has advanced in the present motion convince this Court otherwise.[10]

Baum has submitted a supplemental citation of authority which advances the conclusory argument that *Re/Max Intern., Inc. v. Realty One, Inc.,* 173 F.3d 995 (6th Cir.1999), is "informative on the issue of antitrust injury and standing" and "should further clarify any confusion that somehow Sixth Circuit and Tenth Circuit holdings on antitrust injury" differ from this case. Baum's *Supplemental Citation Of Authority* (Doc. # 103) filed April 16, 1999 in Case No. Civ.A. 98MC1249–KHV, at 1–2. According to Baum, *Re/Max* confirms that "a direct competitor has standing and suffers antitrust injury when it is targeted and victimized by a conspiracy to exclude it from competition." *Id.* at 2.

In *Re/Max,* a national real estate brokerage franchisor, subfranchisor and franchisees sued two local real estate firms. Under defendants' adverse-splits policy, whenever Re/Max agents were involved in a transaction, defendants paid them only 25 or 30 percent of the commission, rather than the industry norm of a 50/50 split. Plaintiffs alleged that the adverse-splits

---

**9.** Nor does Baum's concern about the safety of aluminum bats alter the analysis whether an antitrust injury exists. *See Baum Research and Dev. Co.,* 31 F.Supp.2d at 1022 n. 9 (citing *National Society of Professional Engineers v. United States,* 435 U.S. 679, 695, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978) (rejecting attempt to justify restraint on competition on basis that competition posed threat to public safety and ethics of profession, as contrary to policy of Sherman Act)).

**10.** The Court would reach the same result under E.D.Mich. Local Rule 7.1(g)(3). Baum has failed to demonstrate a palpable defect by which the Michigan court and the parties have been mislead. Also, the Court is in substantial agreement with the arguments which the bat manufacturers have proffered in opposition to Baum's motion, and the Court therefore adopts those arguments by reference.

policy—the means by which defendants chose to dominate the market for hiring real estate agents—violated the antitrust laws. Plaintiffs claimed that defendants controlled the market for knowledgeable and experienced sales agents and that through the unfair adverse-splits policy, they prevented Re/Max from recruiting those agents, thereby depriving Re/Max franchises of the information and expertise they needed to effectively serve buyers and sellers of homes.

In *Re/Max*, the Sixth Circuit rejected defendants' argument that the franchisor plaintiffs lacked standing to bring antitrust claims because they could not show antitrust injury. The court noted that "defendants admit[ed] [that] they intended to thwart, through the implementation of adverse splits, Re/Max's attempt to recruit defendants' agents." The court further noted that

> Although the policy was aimed more directly at Re/Max franchises, the effect was to deter agents from defecting to Re/Max, thereby impeding an innovative competitor's access to the market. *** Denying the franchisors standing would result in antitrust violations going "undetected or unremedied" if in fact Re/Max franchises were barred from [the] markets.

173 F.3d at 1023.

That situation is not analogous to this case. Here, defendants allegedly induced the NCAA *not* to pass a rule which restricted bat performance standards. As a result, bat manufacturers continued to produce and market different bat designs and the amateur baseball market retained the right to choose which type of baseball bats to use. It was the consumers' unhindered preference for aluminum bats, then, which prevented Baum from selling composite wood bats. The Michigan court therefore properly concluded that "there is a logical inference that the absence of a rule regulating bat performance actually fosters competition." *Baum*, 31 F.Supp.2d at 1022. *See also Valley Products*, 128 F.3d at 403 (antitrust injury doctrine bars recovery where asserted injury, although linked to alleged violation of antitrust laws, flows directly from conduct that "is not itself an antitrust violation").

Baum also cites *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53 (1st Cir.1999), for the proposition that the antitrust laws specifically prohibit defendants' "conspiratorial and biased standard setting activities" because defendants distorted and manipulated the standard setting process to prevent increased competition. In *DM Research*, the First Circuit Court of Appeals noted that in cases which involve anticompetitive quality standards, "the principal concern has been the use of standards setting as a predatory device by some competitors to injure others" and that in such cases, there is normally "a showing that the standard was deliberately distorted by competitors of the injured party, sometimes through lies, bribes, or other improper forms of influence, in addition to a further showing of market foreclosure." 170 F.3d at 57–58 (footnote omitted). The First Circuit further opined that "it is not intrinsically an antitrust violation for an organization to limit its endorsement to those who meet its published standards unless the standard itself is shown to be anticompetitive in purpose or effect." 170 F.3d at 58. In this case, however, Baum's complaint is not that the NCAA set an anticompetitive standard; its complaint is that the NCAA's failure to set a standard (albeit because of a distorted standard-setting process) injured its ability to compete. As the Michigan court noted, it is logical to infer from Baum's allegations that the *absence* of a bat performance rule actually enhanced competition. Therefore *DM Research* is clearly inapposite.

Finally, Baum cites *Full Draw Productions v. Easton Sports, Inc.*, 182 F.3d 745

(10th Cir.1999), for the proposition that the proposed amended complaint properly alleges antitrust injury, in that Baum was the target of the conspiracy and was victimized by its anticompetitive consequences. *Full Draw Productions* is readily distinguished, however, on its facts. In that case an archery trade show promoter sued archery manufacturers and an archery trade association, alleging a group boycott of its trade show in violation of the antitrust laws. In concluding that plaintiff's injury reflected the anticompetitive effects of the group boycott, the Tenth Circuit noted that because plaintiff produced "one of only two archery trade shows in the United States, the purposeful and wrongful destruction of [plaintiff's] business by Defendants directly injured competition as well as injuring [plaintiff]." 182 F.3d at 754. The court further opined that "we have no doubt that alleging the loss of one of two competitors in this case alleges injury to competition" and therefore "the instant case is not one in which it is alleged that a competitor fell prey to competition; it is one in which it is alleged that competition fell prey to a competitor." *Id.* Finally, the court noted that the effect of defendants' boycott "was not to increase competition," but rather to reduce competition through the elimination of one source of output, "thereby limiting consumer choice to the other source of output" and causing "the unnatural demise of [plaintiff's trade show] at the hands of defendants." *Id.* at 755.

This case involves several competitors, and Baum cannot allege the loss of one of only two competitors. More importantly, this is essentially a case in which plaintiff complains that a competitor fell prey to competition. Baum alleges that defendants induced the NCAA not to pass a rule which restricted baseball bats. As a result, amateur baseball retained the right to choose which types of bats to use, and in exercising that right did not choose

Baum's wood composition bat. Thus, unlike *Full Draw Productions*, the elimination of a competitor was the direct result of "the economic freedom of participants in the relevant market." *Id.* (citations omitted).

For all of these reasons, the Court concludes that Baum has not alleged antitrust injury and that its motion for reconsideration of that issue should be overruled.

**B. Necessary Predicate**

As an alternative basis for dismissing Baum's antitrust claims, the Michigan court held that "even if Baum could somehow establish that NCAA's failure to regulate bat performance had an anticompetitive effect on the market, Baum cannot show that its injury flowed from the purported violation of the antitrust laws." *Baum*, 31 F.Supp.2d at 1023. Simply stated, the court held that Baum cannot establish that the antitrust violation was the "necessary predicate" to its injury because the NCAA had the lawful authority to refuse to change the baseball bat rules in Baum's favor. *Id. See also Valley Products Co., Inc. v. Landmark*, 128 F.3d 398, 403–04 (6th Cir.1997) ("[t]he Sixth Circuit, it is fair to say, has been reasonably aggressive in using the antitrust injury doctrine to bar recovery where the asserted injury, although linked to an alleged violation of the antitrust laws, flows directly from conduct that is not itself an antitrust violation.").

Baum briefly challenges this portion of the Michigan court's ruling, arguing that its exclusion from the amateur baseball bat market was the "direct and proximate consequence" of defendants' conspiracy, that Baum's resulting injury was the "ineluctable result" thereof, and that "the violation was the necessary predicate to Baum's injury." *Memorandum In Support of [Baum's] Motion For Reconsideration And To Amend The Complaint* at 9. Baum

further argues that its injury does not flow from the NCAA's lawful refusal to change the rules because the rule process is "rigged" by defendants' conspiracy. In the alternative, Baum claims since the recent rule change promotes competition and were it not for defendants' conspiracy, the change "would and should have taken place at least five years ago." *Id.* at 9–10.

The bat manufacturers note that the "necessary predicate" requirement was not the basis for their motion to dismiss Baum's original complaint. They argue that the Michigan court's discussion of the necessary predicate requirement was secondary to its holding that Baum had not suffered antitrust injury. The bat manufacturers also contend that the "necessary predicate" requirement is peculiar to the Sixth Circuit and has been widely criticized and rejected in other circuits, *see, e.g., Lee–Moore Oil Co. v. Union Oil Co.,* 599 F.2d 1299, 1302 (4th Cir.1979); *Ostrofe v. H.S. Crocker Co., Inc.,* 670 F.2d 1378, 1384–87 (9th Cir.1982); *Irvin Indus. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 245 (2d Cir.1992), and that the doctrine is inconsistent with Tenth Circuit caselaw on antitrust injury. *See, e.g., Reazin v. Blue Cross & Blue Shield of Kan., Inc.,* 899 F.2d 951, 960–63 (10th Cir.1990) (upholding antitrust damage award despite defendant's right to refuse to deal with plaintiff absent anticompetitive behavior). Accordingly, the bat manufacturers argue that the Court need not address the Michigan court's analysis of the issue in ruling on Baum's motion for reconsideration.

Concurring with the reasoning of the Michigan court, the NCAA argues that

any alleged injury that [Baum] suffered from the NCAA's promulgation of bat performance standards cannot be an "antitrust injury" because the NCAA's power to set those standards is derived from its own rulemaking authority, and not the alleged conspiracy[,] and thus

the NCAA's alleged participation in this "conspiracy" was not a necessary predicate to Baum's alleged injury. *See Hodges v. WSM, Inc.,* 26 F.3d 36 (6th Cir.1994).

NCAA *Response To Plaintiffs' Motion For Reconsideration And To Amend The Complaint* (Doc. # 1) filed December 23, 1998, at 2. Because Baum cannot establish the necessary predicate requirement, the NCAA concludes that Baum's proposed amended complaint will suffer the same fate as Baum's original complaint: dismissal under Fed.R.Civ.P. 12(b)(6). Accordingly, the NCAA argues that Baum's motion for reconsideration and to amend must be denied.

Unlike the bat manufacturers, however, the NCAA does not believe that this Court, in ruling on Baum's motion for reconsideration, should simply disregard the portion of the Michigan decision which addresses the "necessary predicate" requirement. The NCAA argues that the Michigan court order is "the law of the case." *See, e.g., KCJ Corp. v. Kinetic Concepts, Inc.,* 18 F.Supp.2d 1212, 1214 (D.Kan.1998) ("[t]raditional principals of law of the case counsel against the transferee court reevaluating the rulings of the transferor court"). Therefore, the NCAA contends, the only proper basis upon which this Court may upset the Michigan court determination of the issue is one of the three grounds justifying reconsideration. *See, e.g., Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991).

The NCAA disputes the bat manufacturers' contention that the "necessary predicate" requirement is inconsistent with the Tenth Circuit approach to the question of antitrust injury. It also posits that even if the "necessary predicate" requirement is inconsistent with Tenth Circuit precedent, such inconsistency is irrelevant in this multidistrict litigation case because the Baum

action (should it be revived) will eventually return to Michigan for trial. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) (cases consolidated under Section 1407 must be remanded to transferor court for trial). The NCAA contends that reinstatement of Baum's antitrust claims on the ground that the Tenth Circuit does not follow the "necessary predicate" requirement would lead to a bizarre result, in that once the action returned to Michigan, it would again be subject to dismissal under Sixth Circuit precedent.

■ The Court agrees with the Court of Appeals for the District of Columbia that "the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit." *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1174 (D.C.Cir.1987) (quoting Marcus, *Conflict Among Circuits and Transfers Within the Federal Judicial System,* 93 Yale L.J. 677, 721 (1984); and citing Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation,* 135 U.Pa.L.Rev. 595, 662–706 (1987)). *See also In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 854 F.Supp. 914, 919 (D.D.C.1994) (accepting basic principle that in multidistrict litigation "a transferee court should normally use its own best judgment about the meaning of federal law when evaluating a federal claim") (citing *In re Korean Air Lines Disaster,* 829 F.2d at 1174).

■ Although this Court is not bound by stare decisis to follow Sixth Circuit precedent simply by virtue of the fact that it is a transferee Court, nor is it obligated to ignore Sixth Circuit precedent. Unlike *In re Independent Service Organizations Antitrust Litigation,* 1998 WL 919125, at *2–3 (D.Kan.1998), where this Court queried whether it was bound to follow Ninth Circuit precedent in resolving motions for summary judgment, in the present case the Michigan court has already applied Sixth Circuit precedent in dismissing Baum's antitrust claims. As a transferee Court ruling on Baum's motion for reconsideration, it is clearly reasonable to follow Sixth Circuit precedent. Applying its own best judgment, *In re Korean Air Lines Disaster,* 829 F.2d at 1174, the Court therefore concludes that Baum's motion for reconsideration should be analyzed under Sixth Circuit precedent.

That said, the Court concludes that Baum has failed to establish that the Michigan court erred in applying the "necessary predicate" issue. Baum's cursory and conclusory arguments do not establish, or even attempt to invoke, any of the grounds which justify reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice. *See Shinwari,* 25 F.Supp.2d at 1208; *see also Anderson,* 738 F.Supp. at 442. The Court agrees with the well-reasoned opinion of the Michigan court on this issue. Baum cannot establish that an antitrust violation was the "necessary predicate" to its injury because the NCAA had the lawful authority to refuse to change the bat rules in Baum's favor. Nothing in Baum's motion persuades the Court of any error in the Michigan decision. Baum's motion for reconsideration on the necessary predicate issue is therefore overruled.

## II. Motion For Leave to Amend The State And Federal Antitrust Claims

■ Baum argues that it "may have" a right to amend its antitrust claims without leave of court and that in any event, the Court should grant leave to amend to correct a palpable defect or prevent manifest injustice. *See* Rule 15(a), Fed.R.Civ.P.; *see also Foman v. Davis,* 371 U.S. 178, 182–83, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962);

*Ohio Cas. Ins. Co. v. Farmers Bank,* 178 F.2d 570 (6th Cir.1949) (where no responsive pleading filed when appellant tendered first amendment to complaint, asserted untimeliness of amendment was not valid ground for rejecting amendment); *Firchau v. Diamond Nat'l Corp.,* 345 F.2d 269, 270–71 (9th Cir.1965) (plaintiff may amend one time as a matter of right even after motion to dismiss has been granted); *Smith,* 139 F.3d at 189 (under Rule 15(a) plaintiff has absolute right to amend complaint once at any time before responsive pleading is served; thereafter, plaintiff must seek leave to amend, and although within its discretion, district court "should grant such requests freely when justice so requires").

Baum characterizes its motion as a request for "reconsideration of the [Michigan] Court's apparent refusal to permit amendment of the antitrust claims based on the erroneous and unsupported factual conclusion that under no set of facts could Baum ever show 'antitrust injury.'" *Baum's Reply To Briefs In Opposition To Motion For Reconsideration And To Amend Complaint* (Doc. # 6) filed January 8, 1999, in *In re Baseball Bat Antitrust Litigation,* 1999 WL 1062519 at 5–6, Case No. 98MC1249–KHV (D.Kan.1999).

Baum's argument that it is entitled to amend without leave of court is not well taken in light of Tenth Circuit authority. *In Glenn v. First Nat'l Bank in Grand Junction,* 868 F.2d 368 (10th Cir.1989), plaintiffs did not exercise their right to amend before the trial court decided defendants' motion to dismiss. On appeal, the Tenth Circuit held that "[a]fter the court granted the motion to dismiss, Appellants · could have amended their complaint only by leave of court or by written consent of the adverse party." 868 F.2d at 370. The Tenth Circuit further rejected plaintiffs' argument that because they "requested" leave to amend before the trial court dismissed their complaint, they were entitled to formally amend as a matter of right. It reasoned:

> If Appellants' theory were to be adopted, the pleading phase of a lawsuit would never end. Such a practice would undermine the distinctions in Fed. R.Civ.P. 15 between "right" to amend and "leave" to amend, and plaintiffs' counsel would then have the right to amend indefinitely simply by including a "request to amend" in their response to a motion to dismiss.... *After a motion to dismiss has been granted, plaintiffs must first reopen the case pursuant to a motion under Rule 59(e) or Rule 60(b) and then file a motion under Rule 15, and properly apply to the court for leave to amend* by means of a motion which in turn complies with Rule 7. In that event, in accordance with Rule 15, "leave shall be freely given when justice so requires."

868 F.2d at 371 (emphasis added). *Cf. Brever v. Rockwell Intern. Corp.,* 40 F.3d 1119, 1131 (10th Cir.1994) (where record clearly showed that plaintiff had repeatedly expressed willingness to amend and had demonstrated particular grounds, but district court misled her to believe that she should wait to amend until court disposed of motions to dismiss, court should have reserved to plaintiff right to amend upon dismissal of action); *Triplett v. Leflore County,* 712 F.2d 444, 445 (10th Cir.1983) (accepting plaintiff's motion to reconsider as request to amend despite its irregularity because motion to reconsider—which included brief with bold captioned title reading "REQUEST FOR LEAVE TO AMEND COMPLAINT"—unequivocally gave district court and opposing counsel clear notice of request to amend and grounds therefore).

In dismissing Baum's antitrust claims, the Michigan court made no mention of any proposed amendments to the antitrust claims. Indeed Baum has identified no pleadings which sought to amend those

claims. To the extent that Baum characterizes the present motion for leave to amend as a motion to "reconsider" the Michigan court's "apparent refusal to permit amendment of the antitrust claims," the motion must fail: Baum has not shown that it properly sought to amend its complaint prior to the Michigan court's order of dismissal, and therefore it cannot establish that the Michigan court's apparent "refusal" to permit such amendment sua sponte constitutes clear error or results in manifest injustice. *See, e.g., Calderon v. Kansas Dept. of Social and Rehabilitation Services,* 181 F.3d 1180, 1187 (10th Cir. 1999) (because motion for leave to amend was never properly before it, district court did not abuse discretion in failing to address plaintiff's request for leave to cure deficiencies in her pleadings) (citing *Brannon v. Boatmen's First Nat'l Bank,* 153 F.3d 1144, 1150 (10th Cir.1998) (court need not address motion never placed before it); *Dahn v. United States,* 127 F.3d 1249, 1252 (10th Cir.1997) (same)).

 Addressing Baum's motion as one for leave to amend in the first instance, the Court briefly analyzes whether justice requires it to exercise its discretion in favor of the proposed amendment. *See* Fed.R.Civ.P. 15(a). The Court may refuse to grant leave to amend where the proposed amendment would be futile. *See Jefferson County School Dist. No. R–1,* 175 F.3d at 858–59 (proposed amendment futile if amended complaint would be subject to dismissal). Baum argues that its proposed amended complaint "streamlines and clarifies the antitrust claims," defines the onset of the conspiracy, avers that Baum was the specific target, details defendants' overt acts ("exclusionary and predatory conduct designed to prevent changes in the NCAA bat rules," obstruction of acceptance of the Baum Testing Machine, and use of exclusive dealing arrangements and gifts to keep Baum from competing), more clearly demonstrates the interrelatedness of the conspiratorial acts and how they adversely affected competition, sets forth more precisely the lack of any procompetitive or efficiency rationales, and more specifically articulates that defendants' conspiracy was designed to and did injure competition and specifically caused antitrust injury to Baum. Furthermore, in an apparent effort to address the Michigan court's conclusion that Baum has not alleged antitrust injury, *id.* at 1023, Baum proposes to amend its complaint to include allegations that, *e.g.,* "[t]he effect of the Defendants' conspiratorial conduct has been to systematically exclude and foreclose the manufacturers of wood or wood composition bats, such as Plaintiffs, from the markets for amateur baseball bats," *[Proposed] First Amended Complaint* at 6, ¶ 15, and the "anticompetitive conduct of the [bat manufacturers] had the effect of foreclosing all other competing bat products, such as wood or wood composite bats from the amateur baseball [bat] markets." *Id.* at 2, ¶ 69.

Baum has proffered no grounds which justify leave to amend. None of the proposed amendments would alter the flawed theory which is the basis for Baum's antitrust claims. The Michigan court properly concluded that even if Baum suffered injury as a result of antitrust violations by defendants, Baum's injury was not the result of any anticompetitive effect on the market, but rather stemmed from competition itself. Baum's effort to evade the ruling by alleging that it claims injury to a competitor rather than to competition are to no avail. The assertion that defendants' conduct injured Baum *and other* wood and wood composition bat manufacturers and the liberal use of the word "competition," throughout the allegations of antitrust injury, do not alter the nub of Baum's case. The proposed complaint still alleges that non-restrictive bat performance standards granted a competitive advantage to aluminum bat manufacturers, "which had the

effect in the markets of excluding competitors such as Baum," and that Baum was the "specific target" of the aluminum bat manufacturers. *Id.* at 23, ¶ 76. The gravamen of the proposed complaint remains the same as the original, legally insufficient, complaint.

The Court's analysis with respect to the motion for reconsideration is equally applicable here. It would be futile to grant leave to amend because the proposed amended complaint, like the original complaint, would be subject to dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Accordingly, Baum's motion for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a) is overruled.

## III. Tortious Interference With Business Relationships And Prospective Economic Advantage

 Under Michigan law, the elements of tortious interference with economic relations are (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferor, (3) intentional interference inducing or causing a breach or termination of a relationship or expectancy, and (4) damages. *See Lifeline Ltd. v. Connecticut Gen. Life Ins. Co.*, 821 F.Supp. 1213, 1216 (E.D.Mich.1993); *Pryor v. Sloan Valve Co.*, 194 Mich.App. 556, 487 N.W.2d 846,, 848–49 (1992).

Defendants moved to dismiss Baum's claim for tortious interference in the original complaint, on the ground that Baum had alleged no reasonable expectation of a business relationship. The Michigan court agreed, holding that "[t]he allegations supporting this count are sparse." It gave Baum an opportunity to amend the complaint to better describe those expectations, however, and cautioned that if Baum did not do so, the count would be dismissed. *See Baum*, 31 F.Supp.2d at 1025. Accordingly, Baum now seeks to amend "to elaborate the nature of Defendant[s]' interference and state the nature of Baum's business expectation." *Memorandum In Support of [Baum's] Motion For Reconsideration And To Amend The Complaint* at 1 n. 1.

Defendants complain that the proposed amendment merely alleges that many people buy baseball bats; that professional baseball leagues prefer wood bats; that Baum "can think of reasons why people might prefer its bats" and some customers have agreed with those reasons; and that Baum has sold 15,000 bats. The bat manufacturers argue that except for Baum's allegations concerning the Mid–American and Cape Cod Conferences,[11] the proposed amendment does not identify specific business relationships or sales that Baum would have made and with which defendants interfered. Further, none of the allegations set forth facts necessary to establish a reasonable expectancy of business. Accordingly, the bat manufacturers argue that Baum's proposed amendment would be futile and that the Court should therefore deny its motion for leave to amend.

These arguments are unpersuasive. Although Michigan law governing tortious interference with prospective economic advantage requires Baum to allege more than a mere hope for a future business opportunity or the innate optimism of the salesman, *e.g., Bell Data Network Communications, Inc. v. Symbol Technologies, Inc.*, 1995 WL 871222, at *5 (E.D.Mich. 1995); *Schipani v. Ford Motor Co.*, 102

---

11. The proposed amended complaint alleges that the bat manufacturers and SGMA "interfered with Baum's business opportunity and expectancy" by inducing the Mid–American and Cape Cod Conferences "to terminate arrangements Baum had made for the use of Baum's bats" in the conferences and by "removing and destroying Baum's bats and replacing them with free high performance aluminum bats." *[Proposed] First Amended Complaint* at 34, ¶ 101.

Mich.App. 606, 302 N.W.2d 307; 314 (1981), Baum need not demonstrate a guaranteed relationship, however, because "anything that is prospective in nature is necessarily uncertain," and "[w]e are not here dealing with certainties, but with reasonable likelihood or probability." *Schipani,* 102 Mich. App. at 622, 302 N.W.2d at 314 (citing *Behrend v. Bell Tel. Co.,* 242 Pa.Super. 47, 363 A.2d 1152, 1160 (1976)).

■ "[T]he tort contemplates a relationship, prospective or existing, of some substance, some particularity, before an inference can arise as to its value to the plaintiff and the defendant's responsibility for its loss." *Id.* "To demonstrate such a realistic expectation, [plaintiff] must prove a business relationship with an identifiable class of third parties." *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.,* 788 F.Supp. 1438, 1451 (E.D.Mich.) (citing *Schipani,* 302 N.W.2d at 314), *appeal dismissed,* 968 F.2d 1215 (6th Cir.1992); *see also Hoffman v. Roberto,* 85 B.R. 406, 416 (W.D.Mich.1987) (to establish whether expectation of economic advantage was reasonable, plaintiff need not prove existence of enforceable contract; it is sufficient to show interference with specific third parties or identifiable prospective class of third persons with whom plaintiff had reasonable expectation of contracting) (citing *Schipani,* 102 Mich.App. at 621–22, 302 N.W.2d 307 and *Wilkerson v. Carlo,* 101 Mich.App. 629, 300 N.W.2d 658, 659 (1980)).

■ The amendments which Baum proposes would rectify the defects in the original complaint. In its revised incarnation, the complaint alleges that the market for amateur baseball bats is huge, consisting of some 11,000 colleges and universities, 16,000 high schools, and 3,600,000 little league baseball players throughout the world; that Baum's wood composition bats are durable and sell for half the price of aluminum bats; that professional baseball teams, players and coaches compliment Baum bats for durability, reliability, performance and value as compared to aluminum and traditional wood bats; that major professional baseball leagues purchase and use Baum bats for use in minor leagues; that major professional leagues prefer college and high school teams to use bats with wood-like speeds for training purposes; that since 1991 Baum has manufactured 15,000 bats, generating approximately $1,600,000.00 in total revenues; that representatives of H & B and Easton have admitted that Baum's bat is a marketable product; that the Baum hitting machine has wide approval among industry experts and is "the best hitting device available to test batted ball speeds"; and that if the NCAA had enforced its wood-like bat standards during the relevant period, the Baum bat "would have been extensively used in college, high school and amateur baseball since 1992, and the Baum Hitting Machine would have been used as a device to test baseball bat speeds since 1996." *[Proposed] First Amended Complaint* at 33–34, ¶ 100.

The proposed complaint further alleges that defendants induced the NCAA Executive Committee to override decisions of the Rules Committee; induced the Mid–American and Cape Cod Conferences to terminate arrangements with Baum for the use of Baum bats, removed and destroyed Baum's bats and replaced them with free high performance aluminum bats; gave free aluminum bats, equipment and money to colleges, universities and coaches to "induce and coerce" the Rules Committee, the Executive Committee and NCAA member schools and coaches "to refrain from adopting any rules, standards or tests that curtailed the use of high performance aluminum bats" in order to exclude wood or wood composition bats; submitted information to the NCAA, the National Federation of State High School Associations, and college, high school and amateur baseball

coaches which falsely indicated that defendants' aluminum bats were safe and no faster than wood, that aluminum bats did not upset the offensive/defensive balance or affect the "integrity of the game," and that the "Brandt BPF standard" confirmed the safety of aluminum bats (when in fact it was an invalid test); and boycotted the Baum Hitting Machine. *Id.* at 34–35, ¶ 101.

Finally, the proposed complaint alleges that in November 1998 Easton disseminated to the Rules Committee and to hundreds of college and high school baseball coaches false information regarding results of tests on the Baum Hitting Machine. *Id.* at 35–36, ¶ 101. The complaint alleges that defendants' misconduct interfered with Baum's business relationships and prospective economic advantage, in the form of lost profits on sales of Baum bats; loss of licensing fees for the Baum Hitting Machine; loss of time and expense incurred in developing the Baum bat and Baum Hitting Machine; and injury to Baum's business, good will, name and business reputation. *See id.* at 36, ¶ 102.

The proposed complaint sufficiently alleges the existence of a valid business expectancy. The allegations reveal that Baum had more than a mere hope for business opportunities or the innate optimism of a salesman. They indicate that Baum's composite wood bats were well received by baseball players and coaches and had previously enjoyed not insubstantial sales. The allegations also point to an identifiable class of prospects to whom Baum had a reasonable expectation of selling composite wood bats. If these revised allegations are true, Baum realistically could have expected better sales and profits from the amateur baseball bat market.

The Court concludes that Baum's claim for tortious interference with business relationships and prospective economic advantage would not be subject to dismissal in its amended form and that the proposed amendments would not be futile. Accordingly, Baum's motion for leave to amend is sustained.

**IT IS THEREFORE ORDERED** that the Baum plaintiffs' *Motion For Reconsideration And To Amend The Complaint* (Doc. # 53) filed December 4, 1998 in *Baum Research and Dev. Co. v. Hillerich & Bradsby Co.,* Case No. Civ.A. 99–2112–KHV, be and hereby is overruled in part and sustained in part. Plaintiffs' motion for reconsideration is **OVERRULED.** Plaintiffs' motion to amend the complaint is **SUSTAINED** as to the claim for tortious interference with prospective economic advantage in violation of state law. Baum shall file its first amended complaint on or before November 8, 1999.